UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:99 CV 2240 |
| | ) | |
| Plaintiff, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| LARRY LOMAZ, | ) | (Regarding Docket No. 107) |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

On May 30, 2003, plaintiff, the United States of America, resolved by consent decree its action against Midwest Fireworks Manufacturing Co., Inc., Fireworks of America LTD Corp., Pacific Financial Services of America, Inc. and Larry Lomaz, for alleged violation of 15 U.S.C. §1263(a) and (c) by introducing, delivering for introduction and receiving in interstate commerce fireworks which were either banned or misbranded for hazardous substances (Docket No. 62).  This consent decree was modified on February 4, 2004 to include an additional $30,000.00 civil penalty ("disgorgement") stemming from a resolution of the government's August 8, 2003  motion to show cause as to contempt (See Docket Nos. 63-95).


Since August 2003, the United States of America has been dissatisfied with Mr. Lomaz' compliance efforts and his failure to pay the $30,000.00 "disgorgement" as agreed.  The United States filed a petition for order to show cause why Larry Lomaz should not be found in civil and criminal contempt pursuant to 18 U.S.C. §401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure (Docket No. 107).  This motion was referred to the undersigned for report and recommendation (See Docket Nos. 110, 114).

5:99 CV 2240                                2

The undersigned initially pointed out to the United States that the conventional method of enforcing the court order arising out of case settlement is through Rule 70 of the Federal Rules of Civil Procedure.  See *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491 (6th Cir. 2001); *RE/MAX Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633 (6th Cir. 2001).  The undersigned explained that should the United States persist to prosecute criminal contempt, then under 18 U.S.C. §401(3) and Fed. R. Crim. P. 42, Mr. Lomaz is entitled to additional rights and to notice in compliance with Crim. R. 42(a)(1).  Rule 42 requires notice with a statement of essential facts constituting the charge of criminal contempt and description of it "as such."  See *U.S. v. United Mineworkers of America*, 330 U.S. 258, 297, 67 S.Ct. 677, 92 L.Ed.2d 884 (1947).[1]

The United States submitted its proposed notice as an order of the court, which the undersigned granted on June 16, 2005, for hearing on the government's petition for order to show cause why Mr. Lomaz should not be found in contempt and set the matter for hearing (Docket No. 126).  At the hearing Mr. Lomaz appeared personally and was represented by Attorney Alexander Jurezenko. At issue are several allegations of defiance by Mr. Lomaz or through his agents that occurred in December 2003, June 2004 and December 2004, and the government's claim that Mr. Lomaz' failed to distribute the May 30, 2003 consent decree to related persons as instructed by that order.

---

[1] The companion matter of civil contempt has become moot in this case.  The government sought to hold Mr. Lomaz solely in civil contempt for the failure to pay the "disgorgement" of $30,000.00, but this penalty was paid prior to the contempt hearing, putting the matter of civil contempt to rest.  (TR. 1 at 10, Docket No. 162).

5:99 CV 2240                                3

*Applicable Law:*

In federal procedure the distinction is sharp between in-court or direct contempt, which may be punished summarily, and out-of-court or indirect contempt, which requires adherence to Criminal Rule 42(a) and due process generally guaranteed to criminal defendants.  Pursuant to 18 U.S.C. §401(3), "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as  - . . . Disobedience or resistance to its lawful writ, process, order, rule, decree or command."  The purpose of criminal contempt is designed to be punitive and  to vindicate the authority of the court, so that respect and compliance be given to the orders issued by the courts possessed of jurisdiction.  *U.S. v. United Mineworkers of America*, 330 U.S. 258, 302-03, 67 S.Ct. 677, 700-01, 91 L.Ed. 884  (1947); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994);*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Alkire v. Irving*, 330 F.3d 802, 818 (6th Cir. 2003). In criminal contempt proceedings for alleged indirect violations, the defendant must be afforded, in addition to proper notice, the rights of presumption of innocence, proof beyond a reasonable doubt, guarantee against self-incrimination, assistance of counsel and right to present a defense and public trial. See *U.S. v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *International Union, UMW of America v. Bagwell*, 512 U.S. at 826-27;  *Bloom v. Illinois*, 391 U.S. 194, 205, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Downey v. Clauder*, 30 F.3d. 618, 686 (6th Cir. 1994).

5:99 CV 2240                                         4

In order to establish criminal contempt in violation of a court order under 18 U.S.C.§401(3), the government must prove that defendant willfully violated a specific, clear, and unequivocal court order.  *Downey v. Clauder*, 30 F.3d at 686. "Knowledge or notice of the court order in question and a willful disobedience of that order are essential elements of criminal contempt."  *U.S. v. Allen*, 73 F.3d 64, 67 (6th Cir. 1995). "Second, the act of disobedience or resistance must be 'a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation.'" *In re Smothers*, 322 F.3d 438, 441-42 (6th Cir. 2003), quoting, *TWM Mfg. Co. v. Dura Corp.* 722 F.2d 1261, 1272 (6th Cir. 1983).

*Events relating to December 2003, Pacific Fireworks Invoice 23 FF-015:*

As a preliminary matter, there is no question that Mr. Lomaz was aware of the May 30, 2003 consent decree as evidenced by the fact that his signature appears five times on that document in different capacities for his various associated entities and for himself (See Docket No. 62).  This consent decree also bears the signature of Mr. Lomaz' counsel, Mr. David Queen. The United States maintains and has established that on December 1, 2003 Mr. Lomaz placed an order under the name of "Pacific Fireworks" for shipping container of fireworks from Hunan Provincial Firecrackers & Fireworks Import & Export Co. which resulted in shipment of 963 cartons which arrived in Hawaii on December 9, 2003 (See Exhibit 3, Cheng testimony at 35, 47, 257, Lomaz' Response at ¶¶ 2, 24 Docket No. 117).  Pacific Fireworks operated four retail locations in Hawaii in December 2003, including stores in Waipahu, Haleiwa, Lihue and Hilo. (Cheng testimony at 77).  Upon the arrival the shipment was inspected by Investigator David Cheng of the U.S. Consumer Products Safety Commission (CPSC) in the presence of Mr.

5:99 CV 2240                                           5

Lomaz on December 17, 2003.  Investigator Cheng observed that 75 of the 963 cartons had

apparently not been tested and approved by the American Fireworks Standards Laboratory

(AFSL), because the cartons did not have the AFSL "stickers" on them (Cheng testimony at 37,

47, 56).[2]  The cartons lacking AFSL "stickers" were opened and field-tested by Investigator

Cheng and the fireworks sampled were found to contain excessive pyrotechnic material.(Cheng

testimony at 38-39). Other samples were sent to the CPSC laboratory in Maryland, which

confirmed the field-test results. (Cheng testimony at 39-41, 51-53)  Investigator Cheng testified

that the two offending types of fireworks in the shipment were "Lotus fireworks" and "Chicago

Gangster Bombs Crackers."   Fifty of the 75 "unstickered" cartons consisted of Chicago

Gangster Bombs Crackers and these items did not appear on the invoice to Pacific Fireworks

(Compare Plaintiff's Exhibit 3-4, Cheng testimony at 41, 59).  Investigator Cheng noted that

the invoice listed "Dynamite Water Cracker" and that the outside of the cartons were labeled

as such *Id.*.  However, the offending Chicago Gangster Bombs Crackers were within these 50

mislabeled cartons.  The obvious conclusion is that the supplier deviated from instruction.  Not

only did Hunan Provincial Firecrackers & Fireworks Import and Export Corp. err in substituting

another firework type, but it ignored specific instructions contained on the invoice that "ALL

ITEMS MEET CPSC AND AFSL REGULATIONS."  (See Exhibit 3-4).

---

[2] The AFSL is an independent laboratory that tests fireworks in China for compliance
with AFSL standards.  (Cheng testimony  35-36, 49-50).  Approval by the AFSL does not
necessarily equate with compliance with federal law and the CPSC retains authority to sample
and test AFSL approved fireworks. *Id.*

5:99 CV 2240                                    6

The United States contends that the foregoing facts establish a violation of paragraph

6 of the May 30, 2003 consent decree which reads:

> 6.      Defendants shall test all fireworks devices imported by Defendants or
> Related Persons from China.  Such testing shall be performed by the
> American Fireworks Standards Laboratory ("AFSL").  Defendants shall
> not import any fireworks devices that fail such testing.  Such testing
> shall be at Defendant's expense.  To the extent that AFSL does not test
> a particular type of fireworks device, Defendants are not obligated to
> have such fireworks devices tested by AFSL.  This Paragraph shall take
> effect for any order of fireworks devices placed by Defendants or
> Related Persons after July 5, 2003.

Clearly there was no willful violation by Mr. Lomaz here.  The order from Pacific

Fireworks required the supplier to ship compliant fireworks but despite this, samples from 75

of the 963 cartons were non-compliant. These facts, however, fail to show an intentional

violation by Mr. Lomaz of paragraph 6 of the consent decree concerning invoice 23 FF-015,

but instead establish negligence by the fireworks supplier.

The United States also contends with regard to this shipment that Mr. Lomaz

intentionally violated paragraph 11 of the consent decree which reads:

> 11.  Defendants and Related Persons shall respond to all Letters of
> Advice from the CPSC within the time specified in the Letter of Advice.
> Further, Defendants and Related persons shall notify the CPSC within
> the time specified in the Letter of Advice and pursuant to the terms of
> the Letter of Advice, what action Defendants and Related persons will
> take in response to the Letter of Advice.

The government argues that Mr. Lomaz failed to respond promptly and completely to

the letters of advice (LOA) from the CPSC regarding corrective action to be taken concerning

5:99 CV 2240                                            7

Lotus fireworks and Chicago Gangster Bombs Crackers.  Theresa Bloxham, CPSC compliance

officer/investigator sent an LOA and notice of noncompliance to Mr. Lomaz and Ms. Erika

Kleinfeld dated December 23, 2003 concerning the aforementioned noncompliant fireworks.

Laboratory testing revealed that both types contained excessive pyrotechnic content and hence

were illegal in the hands of the general consumer (Exhibit 34).  Ms. Bloxham testified that the

letter was sent on December 26, 2003 (Bloxham testimony at 274-77).  The letter called for

corrective action plan to be submitted within 10 days of receipt.  The LOA gave Mr. Lomaz the

option of re-exporting the product, reconditioning the product or its voluntary destruction

(Exhibit 34, Bloxham testimony at 274-75).  Mr. Lomaz timely responded on January 7, 2004

as follows:

> I have advised the factory to check the quality control on the Lotus
> firecracker.
>
> I have also asked the factory to check the Chicago Firecracker. The
> AFSL and the factory advised me that they stand by their test results.
>
> Because I do not have a storage license I have shipped the product to be
> destroyed. I have advised AFSL is to investigate why the test they
> conducted are different than CPSC.  I will let you know after they re-test
> the product in China which is from the same lot.
> (Exhibit 39)

In turn, Ms. Bloxham wrote in a letter dated January 16, 2004 that copies of supplier

notification had been requested which Mr. Lomaz had failed to include and she again requested

a corrective action plan for the Chicago Gangster Bombs Crackers referring to an earlier

telephone conversation with Mr. Lomaz in which he stated that he was unable to find a

hazardous materials disposal firm to destroy the fireworks (Exhibit 40).

5:99 CV 2240                                                8

As a matter of criminal contempt, the undersigned finds no intentional violation by Mr. Lomaz of paragraph 11 in the consent decree.  From the government's arguments, it obviously believes that Mr. Lomaz was to comply with the LOA.  However, the consent decree reads, "respond," not "comply."  The consent decree only requires Mr. Lomaz to "notify the CPSC ...pursuant to the terms of the Letter of Advice, what actions Defendants and Related Persons will take in response to the Letter of Advice."  The government believes that Mr. Lomaz was required to follow CPSC instructions based on this wording.  However, "pursuant to the terms" can be interpreted as a mere follow-up response.  Read in that sense, Mr. Lomaz complied with paragraph 11 because all he was required to do was communicate in response to the LOA from the CPSC.  Accordingly, with respect to the events spawned by the December 2003 invoice 23 FF-015, there was no violation of the consent decree and Mr. Lomaz should not be held in contempt for events surrounding invoice 23 FF-015.

*Events relating to December 2003, Erika Kleinfeld Invoice 23 FF-016:*

The government next claims that Mr. Lomaz placed an order for fireworks identified as invoice 23 FF-016 as owner and president of Pacific Fireworks on December 1, 2003.  The evidence shows that this order was not directly placed by Mr. Lomaz or Pacific Fireworks.  The invoice pertaining to this order was placed with Hunan Provincial Firecrackers & Fireworks Import & Export Corp. under the name of Erika Kleinfeld for 552 cartons including freight totaling the amount of $11,516.70 (Exhibit 8-3). Mr. Lomaz did concede that this order was placed on December 1, 2003. (Response ¶24 Docket No. 117)  Unlike the previous invoice, this

5:99 CV 2240                                              9

invoice to Ms. Kleinfeld did not note an instruction to Hunan Provincial to ship items that were U.S. Consumer Products Safety Commission or AFSL compliant.   Investigator Cheng discovered this shipment after requesting U.S. Custom's harbor records (Cheng testimony at 42-44).  On December 26, 2003, he inspected the lot with Ms. Kleinfeld and noted that only one of the 552 cartons of fireworks had an AFSL "sticker" (Cheng testimony at 60-62, 66).  Ms. Kleinfeld completed the U.S. Customs entry papers as Kleinfeld, Erika, dba Pacific Fireworks (Exhibit 8-1). Ms. Kleinfeld denied to Investigator Cheng that this shipment had anything to do with Pacific Fireworks or Mr. Lomaz. (Cheng testimony at 73- 75).  She later signed a Consumer Products Safety Commission affidavit in the presence of Investigator Cheng promising not to distribute the products without prior CPSC approval.  In this affidavit she gave her capacity as "franchise owner" and "president" of Pacific Fireworks and stated that she had familiarity with the day-to-day operations of Pacific Fireworks (Exhibit 10-1).

Ms. Kleinfeld signed a power of attorney providing a broker, John C. Stowe & Co., certain authority to act as an agent for Pacific Fireworks in the importation of fireworks. Kleinfeld identified herself as doing business as Pacific Fireworks located at 3-2600 Kaumualii Highway, Suite B-18, Lihue, Hawaii. [Exhibit 9; Cheng testimony at 67-68].

Although this companion December, 2003 invoice appears not to involve Mr. Lomaz, the government  presented ample evidence to show that Ms. Kleinfeld was a mere agent or "strawman"  in an arrangement contrived to circumvent the May 30, 2003 consent decree.

5:99 CV 2240                                    10

Mr. Lomaz paid for the fireworks order identified in invoice 23FF-016 in the amount of $11,516.70 from a cash management account maintained by Merrill Lynch. The cash management account had been held jointly by Mr Lomaz and his mother, Rose Lomaz, until approximately March 2004, when Mr. Lomaz' name was removed from the account (Exhibits 69, 71, 68-8, and 70-8; Rose Lomaz testimony at 650). On December 10, 2003, Mr. Lomaz appeared at a Cleveland-area Merrill Lynch office and personally requested Kelly Ann McCollum to wire $11,516.70 from this cash management account to Hunan Provincial Fireworks, the same amount and payee reflected on invoice 23FF-016 (Exhibits 71, 70-8, and 8-3; McCollum testimony at 437 - 438).

Previously with regard to the Pacific Fireworks shipment in invoice 23FF-015, Mr. Lomaz signed an affidavit that stated in part: "I am Larry Lomaz, president, Pacific Fireworks ... I am knowledgeable of the day to day operations of this company and its business records." (Exhibit 4; Cheng testimony at 54 - 56). During his December 17, 2003 inspection of the first shipment (invoice 23FF-015) Investigator Cheng asked Mr. Lomaz on two occasions if he anticipated receiving or bringing in any more fireworks during that season. On both occasions, Mr. Lomaz replied "no, he didn't." Following the inspection, Mr. Lomaz commented to Investigator Cheng that he was missing 500 cartons of fireworks. Investigator Cheng asked Mr. Lomaz whether he anticipated that the fireworks would arrive later, and Mr. Lomaz told him "no." Mr. Lomaz never informed Investigator Cheng of a second shipment. (Exhibit 95; Cheng testimony at 41 - 42, page 210- 23). However, it is reasonable to infer that Mr. Lomaz had expected the missing 552 cartons from invoice 23FF-016.

On November 24 , 2003, "Erika Kleinfeld/Pacific Fireworks" applied for a license to sell fireworks at 94-216 Farrington Highway, Waipahu, Hawaii. On December 19, 2003, Mr. Lomaz signed a lease to rent that property for Pacific Fireworks, and paid $4,000.00  rent for this property using his cash management account at Merrill Lynch.  (Exhibits 1-2, 14, 15, 73, Cheng testimony 77-78, 83-84).

On November 24 , 2003, "Erika Kleinfeld/Pacific Fireworks" applied for a license to sell fireworks at 66-165 Kamehameha Highway, Haleiwa, Hawaii. Mr. Lomaz leased property at this location to sell fireworks in late December 2003. An e-mail exchange between Mr. Lomaz and the property manager discussed the lease arrangement, (Exhibits 1-3 and 19; Cheng testimony at  79-80).

On November 24, 2003, "Erika Kleinfeld/Pacific Fireworks" applied for a license to import and sell fireworks at 3-2600 Kaumuali Highway, Lihue, Hawaii. This application was attached to a letter on Pacific Fireworks letterhead and signed by Ms. Kleinfeld.   The application also includes invoice 23FF-015 (the Lomaz/Pacific Fireworks shipment), identifying the shipment of fireworks that Investigator Cheng inspected in the presence of Mr. Lomaz. The lease for this property was signed by Erika Kleinfeld for Pacific Fireworks. Mr. Lomaz paid for the lease of 3-2600 Kaumuali Highway using a checking account of Grand Slam Fireworks, another of Mr. Lomaz' companies.(Exhibits 2, 20, 21 and 24-5; Cheng testimony at 81-83, 92-95; Briden testimony at 559)

5:99 CV 2240                                                    12

The fourth Pacific Fireworks retail store was located in Hilo, Hawaii, and managed by Russ Hoylman. Mr. Hoylman was employed by Mr. Lomaz and Mr. Hoylman informed Investigator Cheng that he sold fireworks from both invoices 23FF-015 and 23FF-016 during December 2003 at the Pacific Fireworks retail location that he managed.  (Cheng testimony at 95-97).

Paragraph 2(D) of the May 2003 Consent Decree defines "Related Persons" as "each and all of Defendants' directors, officers, agents,  representatives, employees, assigns, and any of all persons or entities in active concert or participation with any of them, and having anything to do with the import, sale or distribution of fireworks devices."  Without any doubt, Ms. Kleinfeld fell within this definition from the consent decree. Neither she nor Mr. Lomaz provided the notice of scheduled arrival and actual arrival of the shipment as required under paragraphs 7 and 8 of the Consent Decree.

The government contends that the evidence establishes beyond a reasonable doubt that Mr. Lomaz violated paragraph 6 of the consent decree by importing 551 cartons of fireworks that were not AFSL tested or approved. Paragraph 6 explicitly requires that Defendants shall test all fireworks imported by Defendants or Related Persons from China with the exception "To the extent that AFSL does not test a particular type of fireworks device, Defendants are not obligated to have such fireworks devices tested by AFSL."  The government failed to establish that the allegedly offending types of fireworks were subject to AFSL testing.

5:99 CV 2240                                    13

The government next contends that Mr. Lomaz' activities violated paragraph 7 of the

consent decree which reads:

> 7.  Defendants shall notify the CPSC by facsimile or overnight express
> mail within two (2) business days of Defendants being informed by any
> person that a shipment of fireworks devices ordered by Defendants or
> Related Persons is scheduled to arrive in the United States.  Such
> notification must include all information received by Defendants,
> including, but not limited to, the date the shipment is scheduled to arrive
> and where the shipment is scheduled to arrive.

The evidence is overwhelming that Mr. Lomaz was actively involved in the ordering, purchase,

and retail sale of fireworks identified in invoices 23FF-015 and 23FF-016. The evidence is also

unambiguously clear that Mr Lomaz through Ms. Kleinfeld sought to willfully conceal his

involvement with the fireworks identified on invoice 23FF-0l6 from the CPSC.


No criminal contempt against Ms. Kleinfeld is being sought.  Compare *In re Lennon*,

166 U.S. 548, 17 S.Ct. 658, 481 L.Ed. 1010 (1897) (railroad engineer held in contempt although

a non-party, he had seen a copy of court's injunction against boycott of freight cards from

nonunionized company).  Her activities though were clearly at the behest of Mr. Lomaz who

set up Pacific Fireworks shops with Ms. Kleinfeld as their figurehead.  Although there was a

purported franchise arrangement, no evidence was produced nor financial records showing her

contribution to the business.  The evidence shows beyond a reasonable doubt that Ms. Kleinfeld

did not act independently and her actions can be attributed to her principal, Mr. Lomaz.  See

*In re Holland Furnace Co.*, 341 F.2d 548 (7th Cir. 1965).  As *Holland Furnace* illustrates, the

principal is liable in contempt for the acts of its agent.  This principle is codified criminally in

18 U.S.C. §2 which in pertinent part provides: "[w]hoever willfully causes an act to be done

5:99 CV 2240                                              14

which if directly performed by him or another would be an offense against the United States, is punishable as the principal."  18 U.S.C. §2(b).  Figuratively Mr. Lomaz was hiding behind Ms. Kleinfeld's skirt in an effort to shield his activities which were not in compliance with the consent decree.

The facts prove beyond a reasonable doubt that Mr. Lomaz failed to follow this notification procedure of paragraph 7.  It was Mr. Lomaz' slip during Investigator Cheng's presence that he was missing about 500 cartons from the shipment.  Investigator Cheng's subsequent investigation of customs records uncovered the shipment under the name of Ms. Kleinfeld.  The government has established beyond a reasonable doubt that Mr. Lomaz intentionally violated paragraph 7 of the consent decree with respect to the shipment under invoice 23 FF-016.

The government next contends that Mr. Lomaz violated the companion and notification provision of paragraph 8 concerning an arrival of fireworks shipments, which reads:

> 8.  Defendants shall notify the CPSC by facsimile or overnight express mail within two (2) business days of Defendants being informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons has arrived in the United States.  Such notification must include all information received by Defendants, including, but not limited to, the date the shipment arrived, where the shipment arrived, and an invoice of the fireworks devices contained in that shipment. Such invoice must identify the fireworks devices by their common named or the names typically used in the fireworks industry.

5:99 CV 2240                                      15

The facts again prove beyond a reasonable doubt that Mr. Lomaz was the principal behind the shipment of the fireworks under invoice 23 FF-016, ordered by a "Related Person" and failed to notify the CPSC as required upon the shipment's arrival.

Finally, the government contends that Mr. Lomaz intentionally violated paragraph 11 of the consent decree.  The government has shown that there were LOA's dated December 30, 2003 to both Mr. Lomaz and Ms. Kleinfeld in which Ms. Bloxham stated that the Fai Cai firecrackers contained excessive pyrotechnic material (Exhibit 36, Bloxham testimony 277-79). This letter instructed that distribution was to be stopped, the supplier notified to correct future shipments and that the recipients of the letter provide a copy of this notice plus a corrective action plan which was to be submitted for approval within 10 days of receipt.  Later another LOA regarding the fireworks shipped under invoice 23 FF-016 was sent dated January 16, 2004 expressing the same concerns with regard to other fireworks in that shipment identified as T808 firecrackers.  (Exhibit 38, Bloxham testimony 280-81).   On January 16, 2004 Ms. Bloxham wrote to Mr. Lomaz and Ms. Kleinfeld stating that she had not received any written response in regard to the prior LOA concerning Fai Cai firecrackers (Exhibit 41).  However, on January 30, 2004 Ms. Bloxham wrote again confirming that she had contact with Ms. Kleinfeld who reported that the offending fireworks were stolen on January 26, 2004 (Exhibit 43).  Ms. Bloxham complained that again with reference to the Fai Cai firecrackers and T808 firecrackers that there was a failure to corroborate the letters sent to suppliers notifying them that the product was in violation of U.S. law and she requested corroboration of the theft including inventory of the stolen items and contact person for fireworks security.

5:99 CV 2240                                        16

On February 12, 2004 Ms. Bloxham wrote to Mr. Lomaz regarding his claim that he was not responsible for the Fai Cai and T808 fireworks (Exhibit 45).  She requested confirmation of this claim and again repeated this request for confirmation in a letter dated March 5, 2004 (Exhibit 48).

While the undersigned understands the government's frustration, Ms. Bloxham's statement on January 26, 2004 that the offending fireworks from invoice 23 FF-016 had been stolen was a timely response to Ms. Bloxham's January 16 letter of advice.  However, there is no timely response to Ms. Bloxham's December 30, 2004 letter regarding Fai Cai fireworks.  Instead, it was not until January 26, 2004 that Mr. Lomaz responded that he was not involved with the fireworks at issue in the December 30, 2003 LOA (Exhibit 41).  (Incidentally the same date that the fireworks were reported as stolen).  The government has established beyond a reasonable doubt that Mr. Lomaz violated paragraph 11 with respect to the December 30, 2003 LOA, but due to timely response has failed to establish violation with respect to the January 16, 2004 LOA.

*Events relating to June 2004, Invoices 24 FF-006, 24 FF-008 and 24 FF-010:*

The government contends that Mr Lomaz received and sold fireworks devices in Florida identified in invoices 24 FF-006, 24 FF-008 and 24 FF-0110 and violated paragraph 7 of the consent decree by failing to notify CPSC within two business days of being informed by any person that the fireworks devices identified and ordered by defendants were scheduled to arrive in the United States, and violated paragraph 8 of the consent decree by failing to notify the

5:99 CV 2240                                        17

CPSC when the fireworks identified in the foregoing invoices arrived in the United States. In invoices dated May 20, 2004, May 28, 2004, and June 3, 2004, large shipments of fireworks were ordered by "Sky Slam Fireworks" of Charlotte Harbor, Florida with a destination of Ft. Myers, Florida to be provided by Hunan Provincial Firecrackers Import & Export Corp. (Exhibit 81-83).  Invoice 24 FF-006 included 1,027 cartons of fireworks devices, invoice 24 FF-008 included 1,191 cartons and invoice 24 FF-010 included 460 cartons of fireworks.  At the time these orders were placed, in the fall of 2003, Mr. Lomaz was the chief executive officer of Grand Slam Fireworks, and its shareholder. (Briden testimony at 485, 557-558). Ada Briden, the secretary-treasurer of Grand Slam Fireworks stated that Sky Slam Fireworks was a "DBA"(doing business as) of Grand Slam (Briden testimony 463-64).  She testified that Mr. Lomaz "helped" with ordering the fireworks in these invoices (TR. 469-70).  The government's exhibits show that Mr. Lomaz' "helping" included personal involvement with the supplier in placing and paying for the invoiced items (Exhibits 87, 88).  When Mr. Lomaz was helping place this order in the fall of 2003 he informed Ms. Briden that he was not allowed to directly order the fireworks. None of the notifications required by paragraphs 7 and 8 of the consent decree was received by the CPSC.

        Although there was a subsequent change of officers for Grand Slam Fireworks in March 2004, at the time the order was placed by Ms. Briden with Mr. Lomaz' assistance, there was both Mr. Lomaz' involvement and the involvement of a "Related Person," Ms. Briden, an employee and officer of  Grand Slam Fireworks. The evidence establishes beyond a reasonable doubt that  Mr. Lomaz did not comply with paragraph 7 in notifying the CPSC of when the

5:99 CV 2240                                        18

scheduled fireworks were to arrive in the United States, nor did he inform the CPSC of their

actual arrival as required under paragraph 8 of the Consent Decree.


*Events relating to June 2004, Invoice INV/204/315:*

The government contends that prior to May 10, 2004 Mr. Lomaz ordered through a

"Related Party," Starr Fireworks of Fargo, North Dakota, 514 cartons of fireworks from China

National Samwong Fireworks Co. Ltd. identified on INV/204/315, and that Starr Fireworks

placed the order for these fireworks devices on behalf of "Sky Slam Fireworks," one of Mr.

Lomaz' companies.    The government claims that these fireworks arrived in Florida without

the proper notification required of Mr. Lomaz under paragraph 7 and 8 of the consent decree.

John Massari, who placed that order, had a conversation with Ada Briden around January 2004,

that she needed a "Wiseguy" assortment of firecrackers (Massari testimony at 14-16).  INV

204/315 documents a shipment of a "Wiseguy" assortment tray (Exhibit 90-2), and a diversion

fee for shipment to Florida (Exhibit 90-6).  Mr. Massari testified that he had these shipments

go directly to Sky Slam so he believed they were shipped directly to the trucking company and

Sky Slam arranged for their own delivery to their store (Massari testimony at 17).  Mr. Massari

testified that he dealt directly with Ada at her store  either Grand Slam or Sky Slam.  *Id.*  The

fireworks arrived in late June 2004, and at that time Ms. Briden  had no expectation of  their

arrival date (Briden testimony at 507-508, 546).  Nonetheless, on June 23, 2004, Mr. Lomaz'

mother, Rose Lomaz, wrote a check to Mr. Massari for $3500.00 (Exhibit 79).  This check was

written on a Merrill Lynch cash management account (Rose Lomaz testimony 650-51).  Rose

Lomaz testified that she helped Mr. Lomaz, her son, financially during financial difficulties and

5:99 CV 2240                                        19

expected to be repaid (Rose Lomaz testimony at 651).  This payment coincides with the shipment to Sky Slam Fireworks as ordered by Ms. Briden. None of the notices required under paragraphs 7 and 8 of the Consent Decree was received by the CPSC.


The government has not shown a violation of paragraph 7 of the consent decree which requires advance notification of the CPSC, since the government has not established that Mr. Lomaz  was "informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons is scheduled to arrive in the United States."  However, the evidence does establish beyond a reasonable doubt that Mr Lomaz was "informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons has arrived in the United States," when he was required to pay the balance due to Mr. Massari for the shipment to Starr Fireworks.


*Events relating to Invoices 24 FF-018 and 2004GDA1118 :*

The government contends that on or about November 2004,  Mr. Lomaz ordered through a related party, Starr Fireworks of Fargo, North Dakota, 1469 cartons of fireworks devices from Hunan Provincial Firecrackers & Fireworks Import & Export Company as identified in invoice number 24 FF-018, and 1353 cartons of fireworks from Changcheng Construction Import and Export Trading Co., Ltd. on behalf of one of Mr. Lomaz' companies, Pacific Fireworks.  As a result of this transaction, the government maintains that Mr. Lomaz has violated paragraphs 7 and 8 of the consent decree concerning notice to the CPSC of both the anticipated arrival of the fireworks and their actual arrival.

Mr. Massari ordered under his corporation's name, Starr Fireworks, 1,469 cartons of fireworks to be shipped to Honolulu, Hawaii (Exhibit 26, Massari testimony 34-36). This order was placed at the behest of Erika Kleinfeld from Pacific Fireworks. *Id.* Around the same time, another order was placed for 1,353 cartons of fireworks from Changcheng Construction Import & Export Trading Company on behalf of Ms. Kleinfeld at Pacific Fireworks (Exhibit 25, Massari testimony at 44-45). On December 2, 2004, Rose Lomaz wired $48,655.10 from her cash management account at Merrill Lynch to Starr Fireworks (Exhibit 75, 78, 94, McCullom testimony at 442-445). After receiving this wire transfer, Mr. Massari paid the amounts due on the invoices (Massari testimony at 42-50). He understood that the transfer from Rose Lomaz was to pay invoices 2004 GDA 1118 and 24 FF-018, although he did not know Rose Lomaz and surmised that she was Mr. Lomaz' wife. (Massari testimony at 50-51).Mr. Massari had only spoken to Ms. Kleinfeld about payment. (Massari testimony at 53) The wire transfer was slightly in excess of the amount actually due on the invoice which Mr. Massari attributed to his carrying charge. (Massari testimony at 51-52).

Ms. Kleinfeld told Investigator Cheng on December 20. 2004, that Mr Lomaz was no longer involved with Pacific Fireworks, and told Fire Inspector Charles Perry that she did not know Mr. Lomaz' whereabouts or what he was doing.(Cheng testimony at 103-05). Mr. Perry, however, had seen Mr. Lomaz at Pacific Fireworks, and when confronted, Ms. Kleinfeld retracted her previous statements and told him that Mr. Lomaz was filing her fireworks applications for the year.(Cheng testimony at 106-06). The regional director of the CPSC did

5:99 CV 2240                                        21

not receive the required notifications from Mr. Lomaz for either the shipment identified in invoice 24 FF-018 or 2004 GDA 1118.


     The government has not shown a violation of paragraph 7 of the consent decree which requires advance notification of the CPSC, since the government has not established that Mr. Lomaz  was "informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons is scheduled to arrive in the United States."  However, the evidence does establish beyond a reasonable doubt that once the shipment arrived at Pacific Fireworks Mr Lomaz was "informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons has arrived in the United States," when he was required to pay the balance due to Mr. Massari on the shipment from Starr Fireworks.


*Failure to Distribute Consent Decree to Employee and Related Persons:*

     The government contends that Mr. Lomaz violated paragraph 14 of the consent decree by failing to distribute a copy of the consent decree to each of his employees and any related person within 45 days of entering on the record the consent decree. This point is conceded by Mr. Lomaz. (Response ¶62 Docket No. 117).

5:99 CV 2240                                    22

### CONCLUSION AND RECOMMENDATION

Mr. Lomaz argues no-harm-no-foul because no physical injury has been attributed to any of the fireworks sold by Mr. Lomaz through his business entities. However, there has been clear evidence of willful defiance and evasion of the portions of the order set forth in the May 2003 consent decree, especially paragraphs 8 and 14.  On the other hand, this contempt proceeding is not a substitute for the criminal charges that could have been brought by the government for Mr. Lomaz' and his cohorts misdeeds in their course of conduct in circumvention of federal law. This proceeding is to vindicate the authority of the court due to Mr. Lomaz' willful disobedience and resistance of a lawful court order or decree.

The undersigned is mindful that judicial contempt power is to be exercised with restraint and discretion. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *In re Smothers*, 322 F.3d at 442. A mere monetary fine, though, will not suffice to punish Mr. Lomaz' flagrant conduct. The criminal contempt statute, 18 U.S.C. §401(3) grants broad discretion with no minimum nor maximum penalty. *U.S. v. Carpenter*, 91 F.3d 1282, 1283 (6th Cir. 1996); and see *Green v. U.S.*, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958).  The undersigned believes that a fine of $500.00 plus incarceration for a period of one (1) day is sufficient to punish Mr. Lomaz for his contemptuous behavior, plus a special assessment of $10.00 ( See *Carpenter*, 91 F.3d at 1283-84).

                                                                         s/James S. Gallas
                                                   United States Magistrate Judge

5:99 CV 2240                                    23

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: November 28, 2005