UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------
                                                                  :
UNITED STATES OF AMERICA,         :        CASE NO. 5:99-cv-2240
                                                                  :
           Plaintiff,                            :
                                                                  :        ORDER AND OPINION
vs.                                                           :
                                                                  :        [Resolving Doc. Nos. 107, 180]
LARRY LOMAZ                                      :
                                                                  :
           Defendant.                          :
                                                                  :
---------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On, March 2, 2005, pursuant to 18 U.S.C. § 401(3) and Federal Rule of Criminal Procedure 42(a), the Government filed a petition to show cause why Respondent Larry Lomaz should not be found in civil and criminal contempt. [Doc. 107.] The matter was referred to Magistrate Judge James S. Gallas for a Report and Recommendation. [Doc. 110.] On November 28, 2005, the magistrate recommended that the Court find the Respondent in contempt and impose a $500 fine and one day of incarceration. [Doc. 179.] The Government timely objected to the Report and Recommendation, taking issue with several of the magistrate's factual determinations and arguing that the contempt penalty was insufficient. [Doc. 181.]

**I.  Factual Background**

The magistrate's report fully describes the factual background of this case. Therefore, the Court summarizes the most pertinent facts for the purpose of this review.

Defendant Larry Lomaz imports fireworks from China for sale through his various

-1-

Case No. 5:99-cv-2240
Gwin, J.

companies. On September 20, 1999, the United States Government ("Government") brought an action against Lomaz for violating the Federal Hazardous Substances Act, 15 U.S.C. §§ 1263(a) & (c), by introducing into interstate commerce banned or mislabeled fireworks containing hazardous substances. On May 30, 2003, this Court issued a Consent Decree against Lomaz, and on February 4, 2004 revised the order. [Docs. 62 & 95.] The Consent Decree required Lomaz to pay a $30,000 disgorgement fee and to provide extra informational reports to regulatory authorities regarding fireworks orders from Chinese producers.

On March 3, 2005, the Government filed a petition to show cause why Lomaz should not be found in civil and criminal contempt pursuant to 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure for allegedly violating the terms of the consent decree. [Doc. 107.] The petition was assigned to Magistrate Judge James S. Gallas for a report and recommendation, which the magistrate issued on November 11, 2005. [Docs. 110 & 180.]

Reviewing the Government's petition, the magistrate made twelve findings as to Lomaz's liability for each of the twelve actions that the Government argued were violations of the consent decree. The magistrate found that Lomaz was guilty of eight separate violations of the consent decree. The magistrate also found that the Government had not shown a violation beyond a reasonable doubt on four others. For the eight violations, the magistrate recommended a penalty of one day incarceration and a $500 fine.

The Government specifically objects to four of the magistrate's findings: (1) No Violation of Consent Decree ¶ 11 Regarding the December 24, 2003 Letter of Advice; (2) No Violation of Consent Decree ¶ 6 from Invoice 23FF-016; (3) No Violation of Consent Decree ¶ 11 from the January 16, 2004 Letter of Advice; and (4) No Violation of Consent Decree ¶ 7 Regarding Invoice

Case No. 5:99-cv-2240
Gwin, J.

INV/204/315.

## II.  Legal Standard

For a district court reviewing a Report and Recommendation's findings where one party has objected, the proper standard of review is *de novo*. *Flournoy v. Marshall*, 842 F.2d 875, 875-76 (6th Cir. 1998). Moreover, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *King v. Zamiara*, 150 Fed. Appx. 485, 496 (6th Cir. 2005) (citing *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Lomaz has not objected to the Report and Recommendation. The government has filed valid objections to four of the magistrate's findings. The Government also objects to the magistrate's recommended penalty for contempt. Therefore, the Court reviews those five determinations *de novo*.

## III.  Analysis

The Government objects to four of the magistrate's no violation findings and to the leniency of the criminal contempt penalty. The Court reviews each finding in turn.

### A.  Violation of Consent Decree ¶ 11 Regarding Invoice 23FF-015 & 12/24/03 Letter of Advice

Paragraph 11 of the Decree states:

> 11. Defendants and Related Persons shall respond to all Letters of Advice from the CPSC within the time specified in the Letter of Advice. Further, Defendants and Related persons shall notify the CPSC within the time specified in the Letter of Advice and pursuant to the terms of the Letter of Advice, what action Defendants and Related persons will take in response to the Letter of Advice.

The magistrate found no violation because he determined that Lomaz had adequately responded to the December 24, 2003 Letter of Advice. The magistrate rejected the Government's argument that paragraph 11 requires full "compliance" with the Letter's terms, and held that by its plain language, the paragraph only requires an adequate "response."

-3-

Case No. 5:99-cv-2240
Gwin, J.

The Court agrees with the magistrate's reasoning. Confining the analysis exclusively to the mandate of Paragraph 11, that paragraph neither states nor implies that the defendant must strictly adhere to the letter's instructions. If the paragraph were intended to require rigid compliance, it could state as much. Instead, it requires the Defendant (not the Government) to determine and "notify" the CPSC "what action the defendant and related persons will take in response to the Letter of Advice." This suggests that the defendant enjoys some discretion in responding to letters of advice. It is clear, however, that in doing so the Defendant must act in good faith. Moreover, he must do so within the time specified in the letter. Provided that the defendant does so, he has fulfilled Paragraph 11's mandate.[1]

In so holding, the Court notes that this is a criminal prosecution, not a contractual dispute. Were it the latter, the Government's interpretation of Paragraph 11 could conceivably prevail. But because this is a criminal proceeding, the burden lies with Government to prove beyond a reasonable doubt that the Defendant willingly violated the Consent Decree's terms. *Michaelson v. U.S. ex rel Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 66 (1924); *TWM Mfg. Co., Inc. V. Dura Corp*, 722 F.2d 1261, 1272 (6th Cir. 1983). Undoubtedly the Government would have preferred that the Decree demanded rigid adherence to a Letter's instructions. But Paragraph 11's requirements are ambiguous at best. A criminal defendant cannot be found guilty unless the law gives adequate notice of its requirements.

Here, the Government urges that anything short of rigid compliance with the Letter is illegal.

---

[1] The Court rejects the argument that this interpretation renders Paragraph 11 meaningless. The paragraph forces the defendant to engage in a meaningful dialogue about how the defendant will address the problem. It also clearly requires the defendant to devise a plan of action "pursuant to the terms" of the Letter.

Case No. 5:99-cv-2240
Gwin, J.

But even assuming, arguendo, that is true, the Decree's vague language fails to adequately notify the Defendant. Accordingly, the Government has not proven beyond a reasonable doubt that the Defendant willingly violated the terms of Decree Paragraph 11.

**B. Violation of Consent Decree ¶ 6 from Invoice 23FF-016**

The Government next alleges that the magistrate recommendation misconstrues the Government's burden in proving the Defendant's violation of Paragraph 6 of the Consent Decree. Paragraph 6 states in full:

> Defendants shall test all fireworks devices imported by Defendants or Related Persons from China. Such testing shall be performed by the American Fireworks Standards Laboratory ("AFSL"). Defendants shall not import any fireworks devices that fail such testing. Such testing shall be at Defendants' expense. To the extent that AFSL does not test a particular type of fireworks device, Defendants are not obligated to have such fireworks devices tested by AFSL. This Paragraph shall take effect for any order of fireworks devices placed by Defendants or Related Persons after July 5, 2003.

The magistrate found no violation because the Government failed to establish that AFSL has testing procedures for the types of fireworks shipped to defendant pursuant to Invoice 23FF-016. (R&R 12). The Government argues that it does not bear the burden of proving the existence of AFSL tests because, it claims, the fireworks' susceptibility to AFSL testing was not in question. (Pl. Obj. 13). Moreover, other invoices on the record, including 23FF-015 and 2004GDA1118, itemize the particular named fireworks on 23FF-016 and bear AFSL certification.[2] The remainder of the items

---

[2] Invoice 23FF-016 lists ninety cartons of Mars Invader Fountain, Kona Gold Fountain, Area 51 Fountain, and Devastation Fountain. These types also appear on 23FF-015, which bears an AFSL approval seal. AFSL lists extensive testing standards for fountain-type fireworks. *See* Am. Fireworks Standards Laboratory, AFSL Standards 28-36 (Feb. 2005), *available at* www.afsl.org.

Case No. 5:99-cv-2240
Gwin, J.

on 23FF-016 are firecrackers,[3/] except for one item listed as PUNK which the Government does not challenge.

The Court agrees with the Government and finds Defendant in violation of Paragraph 6. The plain language of Paragraph 6 clearly casts the full burden of procuring and financing AFSL testing on the Defendant, implying that Defendant has the additional correlate duty of becoming familiar with all available testing procedures. Moreover, the completed testing on invoices 23FF-015 and 2004GDA1118 indicate that Defendant was actually aware of the existence of testing procedures for these fireworks. Therefore, this Court need not determine whether the Government bears the burden of proving the existence of AFSA testing procedures: even if such a burden exists, the Government has met it here. Accordingly, the Court holds that Defendant knowingly imported 547 cartons of untested fountains and firecrackers that were susceptible to AFSL testing in flagrant violation of Paragraph 6.

**C. Violation of Consent Decree ¶ 11 from the January 16, 2004 Letter of Advice**

For the reasons described in Part A above, the Court adopts the magistrate's recommendation on this charge. The Government has not proven the Defendant's willing violation beyond a reasonable doubt.

**D. Violation of Consent Decree ¶ 7 Regarding Invoice INV/204/315**

The Government claims that the Defendant violated Paragraph 7 of the Consent Decree because he was aware of the incoming shipment of fireworks but failed to notify CPSC. Paragraph 7 states:

---

[3/] Invoice 23FF-016 lists 457 cartons of various varieties of firecracker. AFSL has testing procedures for firecrackers. *See* AFSL Standards 21-27.

Case No. 5:99-cv-2240
Gwin, J.

> Defendants shall notify the CPSC by facsimile or overnight express mail
> within two (2) business days of Defendants' being informed by any person
> that a shipment of fireworks devices ordered by Defendants or Related Persons
> is scheduled to arrive in the United States. Such notification must include all
> information received by Defendants, including, but not limited to, the date the
> shipment is scheduled to arrive and where the shipment is scheduled to arrive.

The magistrate found no violation of Paragraph 7 because he found that the Government had not proven beyond a reasonable doubt that Defendant was aware of the incoming shipment of fireworks to his company Sky Slam Fireworks. Responding, the Government argues that the record shows the Defendant's timely knowledge of the shipment. (Pl. Obj. 17).

The Court agrees with the magistrate's determination on this issue. The defendant was aware that his agent Ada Briden ordered this shipment of fireworks (Massari testimony 93), but neither the Defendant nor Ms. Briden was aware of the exact delivery date until the shipment arrived. (Briden testimony 507-08, 546.) The Government has provided no evidence to show the Defendant's actual knowledge of the information Paragraph 7 requires before the shipment actually arrived at Sky Slam Fireworks in Florida.[4] Accordingly, the Government has not proven beyond a reasonable doubt that the Defendant was notified of the incoming shipment and willfully violated Paragraph 7.

**E. The Punishment Imposed**

The magistrate recommended that this Court impose a sentence of one day incarceration and a $500 fine. The Government objects to that recommendation, insisting that it is too lenient given Lomaz's history of willfully skirting the law. Instead, the Government urges this Court to impose

---

[4] The Defendant's subsequent failure to notify CPSC violated Paragraph 8 of the Consent Decree, as the magistrate determined. Paragraph 8 states in relevant part: "Defendants shall notify CPSC by facsimile or overnight express mail within two (2) business days of Defendants' being informed by any person that a shipment of fireworks devices ordered by Defendants or Related Persons *has arrived* in the United States." (emphasis added).

Case No. 5:99-cv-2240
Gwin, J.

a six month period of incarceration, order a $65,000 fine, and permanently ban Lomaz and those related from the fireworks business.

In determining a reasonable sentence, the Court considers several factors. These include the need to impose just punishment, afford adequate deterrence, protect the public, reflect the seriousness of the offense, and to discourage the offender from engaging in unlawful conduct in the future.

In recent years, fireworks have caused many severe injuries and significant fire damage to homes and other structures.[5] Between 1997 and 2001, fireworks killed an average of fifteen people annually - seven from fireworks directly and eight more from fires started by fireworks.[6] In addition, fireworks have cost between $15 and $20 million in property loss in each year since 1994.[7] Accounting for frequency and quantity of use, fireworks carry the highest risk of fire death of any consumer product available in the United States.[8] Moreover, illegal fireworks[9] caused one-third

---

[5] Data from the American Academy of Pediatrics indicate that, on average, 12,000 fireworks-related injuries are reported annually. (Joe D'Aquila, Invitation to Disaster, *The Trentonian*, May 28, 2006, *available at* www.trentonian.com; *see also* Margie Colonian, Nat'l Fire Protection Assoc., A Long Road Back: A Story About Fireworks in Untrained Hands, *NFPA Journal*, Sept./Oct. 2004.) Half of those injured are children under the age of fifteen. (*Id.*). Most of the injuries to children are caused by mishandling (Child Welfare League of America, Health Tips: Fireworks Safety, *available at* http://www.cwla.org/), while nearly every fireworks-related injury to teenagers and adults is accompanied by alcohol use. (Heather Hatfield, WebMD, Light Up July 4th - Safely, June 25, 2004, *available at* http://www.medicinenet.com/script/main/art.asp?articlekey=50282.) Generally, bystanders are injured more often than the fireworks users themselves. (*See* Child Welfare League of America, Health Tips.)

[6] John R. Hall Jr., Nat'l Fire Protection Assoc., *Fireworks* 1, May 2005.

[7] *See id.* This figure does not include the cost of direct property damage to structures, which amounted to $26 million in 2002. *Id.*

[8] Hall 16-17.

[9] Federal law prohibits the use of explosives with over fifty milligrams of explosive components, including devices commonly referred to as M-80s, M-100s/Silver Salutes, M-250s, and M-1000s/Quarter Sticks. *See* Bureau of Alcohol, Tobacco, and Firearms, U.S. Dep't of Justice, "Illegal Explosives Devices," *available at* http://www.atf.gov/explarson/illegalexpldevices.pdf. Ohio permits
(continued...)

-8-

Case No. 5:99-cv-2240
Gwin, J.

of all fireworks-related injuries over the past decade.[10]

The Defendant's reckless and unlawful business practices increase the likelihood that such illegal or unregulated fireworks will reach the hands of American consumers, including children. Such lawlessness, if allowed to continue, will undoubtedly further contribute to injury, property damage, and perhaps death. It is therefore critical to impose a sentence that protects the public and deters the Defendant and others from such behavior.

After weighing these considerations and the other sentencing factors, the Court believes that a sentence more severe than the magistrate's recommendation - but less severe than the Government's position - will best accomplish the goals stated above. The Court therefore imposes a sentence of 30 days incarceration, and a $5000 fine. The Court further advises the defendant that further violations will suggest a disqualification from fireworks-related business activity for some period.

### IV.  Conclusion

For the foregoing reasons, the Court **ADOPTS** eleven of the Report and Recommendation's twelve determinations of whether the Defendant's violated the Consent Decree.  The court **REJECTS** the magistrate's finding of no violation of Paragraph 6 from Invoice 23FF-016. As such, the Court finds the Defendant has committed nine contempt of court violations. The Court further **REJECTS** the Report's recommended penalty. Instead, the Court **ORDERS** the following sentence

---

[9](...continued)
  sale of consumer fireworks, but only allows in-state use of sparklers and other novelty noise-makers. *See* National Council on Fireworks Safety, State Laws: Ohio, available at www.fireworksafety.com.

[10]  Nat'l Fire Protection Assoc., Fact Sheet Sept./Oct. 2004, *available at* www.nfpa.org.

Case No. 5:99-cv-2240
Gwin, J.

imposed on the Defendant: 30 days incarceration; and a $5000 fine.

    IT IS SO ORDERED.


Dated: June 8, 2006            s/ *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE